UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northern States Power Company,
a Minnesota corporation,

Plaintiff,

v.

PECO Energy Company,
a Pennsylvania corporation,

Defendant.

Civ. File No. 00-302 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on the Motion for Summary Judgment of Plaintiff Northern States Power Company. Plaintiff seeks summary judgment on its request for a declaratory judgment of non-infringement. For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied.

**BACKGROUND**

This case presents a dispute about the similarity between the names "Xcel Energy" and "Exelon Energy." Exelon Energy is a registered service mark of Defendant PECO Energy Company ("PECO"). PECO has operated as Exelon Energy at least since 1997. Although PECO's business was primarily concentrated in Pennsylvania and other mid-Atlantic states, PECO recently merged with Unicom Corporation, an energy company based in Chicago. Through the merger, PECO now serves customers in the Midwest, including Illinois, Ohio, and Michigan.

DEC 1 5 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

In March 1999, Northern States Power Company ("NSP") merged with New Century Energies, a Colorado power company. NSP thus expanded its range from the Midwest to states including Colorado and New Mexico. Soon after the merger, the companies announced that they had chosen the name Xcel Energy for the new corporation. On August 21, 2000, at the completion of the merger, the new company began operating as Xcel Energy, and also began an intensive marketing campaign to inform customers that NSP had changed its name to Xcel Energy.

In June of 1999, after learning that NSP intended to change its name to Xcel Energy, PECO wrote to NSP, advising NSP that PECO considered Xcel Energy to be potentially infringing on its mark Exelon Energy. (See Wahlgren Aff. Ex. B.) NSP did not respond. Two months later, in August 1999, PECO again contacted NSP to express its concern over the similarities between Xcel and Exelon. (Id. Ex. H.) NSP responded in October 1999, stating that NSP "simply cannot agree that there is a likelihood of confusion between" Exelon Energy and Xcel Energy. (Id. Ex. I.) On February 8, 2000, NSP brought this action, seeking a declaration that it is entitled to use the name Xcel Energy free from infringement of the name Exelon Energy. PECO counterclaimed, asserting claims of service mark infringement under the Lanham Act, the Minnesota Deceptive Trade Practices Act, and the common law, and seeking its own declaratory judgment that Xcel Energy infringes PECO's mark.

NSP now asks the Court to grant summary judgment on its request for a declaratory judgment. According to NSP, there are no factual issues to be resolved, and the evidence,

even taken in the light most favorable to PECO, shows that there is no likelihood of confusion between Xcel and Exelon.

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enterprise Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Likelihood of Confusion**

In this service mark infringement case, the relevant question is whether Xcel Energy so resembles Exelon Energy so that the use of Xcel Energy is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To determine whether there is a likelihood of confusion, courts should examine the following factors:

> (1) the strength of the trademark; (2) the similarity between the parties' marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse; (5) evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers.

Duluth News-Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1095 (8th Cir. 1996) (citing SquirtCo, Inc. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).) Resolution of the likelihood of confusion issue "does not hinge on a single factor, but requires consideration of [all the] factors to determine whether under all the circumstances there is a likelihood of confusion." SquirtCo, 628 F.2d at 1091. Courts should apply "an expansive interpretation of likelihood of confusion" when the products involved are the same or similar. Anheuser-Busch, Inc. v. Balducci Publ'ns, 28 F.3d 769, 774 (8th Cir. 1994).

Likelihood of confusion is generally a question of fact, not amenable to resolution on summary judgment. SquirtCo, 628 F.2d at 1091. NSP contends that summary judgment is appropriate because here the dispute does not concern the facts themselves, but rather the interpretation to be given those facts. See Woodsmith Pub. Co. v. Meredith Corp., 904 F.2d

1244, 1247 (8th Cir. 1990). Given the volumes of conflicting evidence submitted by the parties, the Court cannot agree with NSP's contention.

1. Strength of the marks

NSP claims that the Exelon Energy mark is weak, as evidenced by numerous other registered marks that contain "exel." (Pl.'s Supp. Mem. at 3-5.) PECO argues that the Exelon Energy mark is strong, because it is a coined mark, and as such is presumed strong and given broad protection. (Def.'s Opp'n Mem. at 18 (citing General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987).) The Court cannot resolve this dispute as a matter of law, because it is clear that genuine issues of fact remain on this issue.

2. Similarity of the marks

NSP points to the differences in the spelling of Xcel and Exelon to argue that the marks are very dissimilar. (Pl.'s Supp. Mem. at 7.) PECO asserts that, in determining similarity, the Court may not simply rely on the visual similarity between the marks, but must also examine whether the marks sound similar. (Def.'s Opp'n Mem. at 20.) As evidenced by PECO's survey of aural confusion (discussed more fully with respect to actual confusion, infra section 5), the pronunciation of the marks is similar enough to raise a genuine issue of fact on similarity.

3. Competitive proximity of the marks

Shortly before the hearing, NSP attempted to introduce evidence that it claims proves that PECO has no intention of expanding nationally into the residential energy market.

PECO objected to the late submissions, and asked the Court to allow PECO to make its own submissions, should the Court decide to consider NSP's submissions. The Court agrees with PECO that NSP's submissions are untimely, and will not consider them.

The evidence submitted during the briefing of the Motion shows that, at the very least, there is a chance that PECO and NSP will compete for energy customers. Moreover, it appears that, due to the recent merger with Unicom, PECO is now serving customers in areas directly adjacent to, if not overlapping with, NSP's territories. There are factual issues as to competitive proximity that preclude the entry of summary judgment.

4. Intent

NSP contends that there is no evidence of intent to confuse in the record. (Pl.'s Supp. Mem. at 20.) According to NSP, NSP does not wish to be confused with PECO in any way. For its part, PECO argues that NSP's intent can be inferred from the fact that NSP ignored PECO's warnings that Xcel Energy potentially infringed Exelon Energy. (Def.'s Opp'n Mem. at 27, citing, inter alia, Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993).) Although the Court has doubts about whether a jury will ultimately determine that NSP intended to cause confusion in the marketplace, there is enough conflicting evidence in the record to create a genuine issue of fact on the issue of intent.

5. Actual confusion

Much of the parties' arguments centers on the element of actual confusion. Each party submitted at least one survey, and each party contends that its survey or surveys

support its position and disprove its opponent's. NSP's survey found only a 1% to 2.9% rate of actual confusion between the marks, but PECO's surveys found between a 44% and a 79% rate of confusion. To complicate matters, each party contends that the other parties' survey methodology is fatally flawed, rendering the conclusions of the survey invalid. According to PECO, NSP's survey tested only visual confusion, and according to NSP, PECO's surveys tested only aural confusion.

Similarity between the marks must be "based on an examination of the marks as a whole, including visual impression and sound." SquirtCo., 628 F.2d at 1091. Therefore, it is likely that neither party's surveys, taken alone, are sufficient to prove or disprove actual confusion. However, the markedly divergent conclusions of the surveys show that disputes of fact exist as to whether there is evidence of actual confusion.

6. Potential customers' degree of care

The parties appear to agree that potential industrial, commercial, and wholesale customers are likely to exercise a high degree of care, and are therefore not likely to confuse Xcel Energy and Exelon Energy. They dispute, however, whether residential customers will exercise the same degree of care. One of the difficulties with predicting the amount of care likely to be exercised by residential customers arises out of the uncertainties surrounding the new regulatory environment. For the first time, energy companies in some areas are allowed to compete for residential customers' business. At oral argument, counsel for NSP contended that in this new environment the federal or state governments will oversee the

contact energy companies have with potential customers. NSP asserts that this oversight will mean that customers will exercise a high degree of care and are not likely to be confused. Simply because a government entity will require energy companies to provide potential residential customers with certain information does not mean, however, that those customers will thereby exercise care in choosing an energy company. The parties' evidence shows that there is a genuine issue of fact on this question.

**CONCLUSION**

Genuine issues of fact exist on all of the elements of likelihood of confusion. Therefore, NSP is not entitled to summary judgment on that issue.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Plaintiff Northern States Power Company's Motion for Summary Judgment (Clerk Doc. No. 35) is **DENIED**.

Dated: December 15, 2000

Paul A. Magnuson
United States District Court Judge